## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

JAMES O'BRYAN,

      Petitioner,

v.                                         Civil No. 2:14-CV-11793

CARMEN PALMER,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

James O'Bryan, ("Petitioner"), incarcerated at the Michigan Reformatory in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for second-degree murder,[1] larceny from a person,[2] and being a fourth felony habitual offender.[3]  For the reasons that follow, the petition for writ of habeas corpus will be DENIED.

## I. BACKGROUND

Petitioner was originally charged with first-degree felony murder and armed robbery.  Following a jury trial in the Saginaw County Circuit Court, Petitioner was convicted of the lesser included offenses of second-degree murder and larceny from a person.  This Court recites verbatim the relevant facts relied upon by the Michigan Court

_____

[1]  Mich. Comp. Laws § 750.317; Mich. Stat. Ann. 28.549.

[2]  Mich. Comp. Laws § 750.357; Mich. Stat. Ann. 28.589.

[3]  Mich. Comp. Laws § 769.12; Mich. Stat. Ann. 28.1084.

of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On August 9, 2008, the body of the victim, Joe Ramirez, was found in his apartment. Statements from the victim's friends led Detective Ryan Oberle, one of the investigating officers, to defendant. After he was arrested, defendant admitted to Oberle and another detective that he attacked the victim. He stated that he did so because he was offended after the victim referred to him as "my bitch." Defendant also admitted that he took a stereo from the victim's apartment.
>
> \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
>
> The forensic pathologist testified that the cause of death was blunt force trauma to the victim's head and torso, and that the victim suffered six significant blows to the head, which caused bleeding on the inside and outside of the brain. Nothing in the pathologist's testimony suggests that the victim died of injuries suffered before August 7, 2008.

*People v. O'Bryan,* No. 292570, * 1, 9 (Mich. Ct. App. January 18, 2011). Petitioner's conviction was affirmed on appeal. *Id.*

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. O'Bryan*, No. 08-31573-FC-1 (St. Clair Cnty. Cir. Ct. July 13, 2012). The Michigan appellate courts denied Petitioner leave to appeal. *People v. O'Bryan*, No. 314231 (Mich. Ct. App. Sept. 6, 2013), *leave to appeal denied,* 843 N.W.2d 515 (Mich. 2014).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court violated my constitutional right to confrontation and due process. (Dkt. # 1, Pg. ID 4.)

II. The actions of my court-appointed attorney prejudiced me and my defense thus depriving me of a fair trial. (*Id.* at Pg. ID 6.)

III. The trial court deprived me of my constitutional right to the effective assistance of counsel. (*Id.* at Pg. ID 7.)

IV. The trial court deprived me of my constitutional right to due process and

2

fair trial.  (*Id.* at Pg. ID 9.)

## II.  STANDARD

According to 28 U.S.C. § 2254(d), as amended by The Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA), courts should impose the following

standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim–
>> (1)     resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the Supreme
>> Court of the United States; or
>> (2)     resulted in a decision that was based on an
>> unreasonable determination of the facts in light of the
>> evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a

state-court decision must be consistent with the respect due state courts in our federal

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a

3

'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

### III.  DISCUSSION

#### A.  Claim # 1.  The right to confrontation/hearsay claims.

Petitioner first contends that his rights to confrontation and to due process were violated by the admission of various out-of-court statements.

To the extent that Petitioner argues that these statements were admitted in violation of Michigan's rules of evidence, he would not be entitled to relief.  It is well settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991);

4

*Pulley v. Harris*, 465 U.S. 37, 41 (1984). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial*." Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994). The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x 147, 150 (6th Cir. 2003); *See also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002) (Friedman, J.) (petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). The admission of this evidence in violation of Michigan's rules of evidence would not entitle Petitioner to relief.

Petitioner has also failed to establish that his Sixth Amendment right to confrontation was violated.

Respondent contends that Petitioner's confrontation claim is procedurally defaulted because Petitioner failed to preserve the issue by objecting at trial.

Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Petitioner contends that trial counsel was ineffective for failing to object to the testimony. Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

5

Petitioner first claims that his right to confrontation was violated when Detective Oberle testified that the victim's friends informed him that "Jim" had been involved in another fight or altercation and that a police report regarding that confrontation identified "Jim" as Petitioner.  The Michigan Court of Appeals rejected this claim on the grounds that the statements were not offered to prove the truth of the matter asserted but to explain why Oberle made efforts to search for Petitioner. *O'Bryan,* Slip. Op. at * 2.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36, 68-69 (2004).  However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.,* at 59, n. 9; *See also Tennessee v. Street*, 471 U.S. 409, 414 (1985) (defendant's rights under the Confrontation Clause were not violated by introduction of an accomplice's confession for the nonhearsay purpose of rebutting defendant's testimony that his own confession was coercively derived from the accomplice's statement).

Courts have noted that "[I]n some circumstances, out of court statements offered for the limited purpose of explaining why a government investigation was undertaken have been determined not to be hearsay." *United States v. Gibbs*, 506 F.3d 479, 486-87 (6th Cir. 2007) (*quoting United States v. Martin*, 897 F.2d 1368, 1371 (6th Cir.1990)).  Evidence that is provided merely by way of background or is offered only to

6

explain how certain events came to pass or why law enforcement officers took the actions that they did is not offered for the truth of the matter asserted, and thus cannot trigger a Confrontation Clause violation. *See U.S. v.Warman,* 578 F.3d 320, 346 (6th Cir. 2009) (*quoting United States v. Cromer*, 389 F.3d 662, 676 (6th Cir. 2004)).

Detective Oberle's testimony concerning Petitioner's identification as a possible suspect did not violate the Confrontation Clause because it was not offered to prove the truth of the matter asserted but was offered for the nonhearsay purpose of providing background information for the investigation of the case and to explain why Detective Oberle made efforts to locate Petitioner. *See Cromer*, 389 F.3d at 676-77 (testimony of officer that he "had information" about drug dealing that occurred at a particular address was permissible as background information even though the jury could link that address to the defendant); *Gibbs*, 506 F.3d at 486-87(agent's testimony that parolee told him that defendant, who was charged with being a felon in possession of firearms, had long guns hidden in his bedroom, was not hearsay, but instead was offered as background evidence to show why defendant's bedroom was searched, and was not offered for its truth, since it did not bear on defendant's alleged possession of pistol with which he was charged).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

Petitioner next claims that his right to confrontation was violated by Heidi Reinero's testimony that the victim told her over the telephone that "Jim" assaulted him and that, after he fed "Jim" a hot dog, "all of a sudden ['Jim'] went crazy."

Petitioner's Confrontation Clause claim fails because the victim did not make these statements to law enforcement but to a friend.  The Confrontation Clause is not

7

implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *See also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford,* 541 U.S. at 51-52, 56. In holding that the Sixth Amendment right to confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."
>
> *Davis,* 547 U.S. at 823-24 (*quoting Crawford,* 541 U.S., at 51).

The victim's statements to his friend Heidi Reinero thus does not constitute "testimonial" hearsay under *Crawford. See Doan v. Carter*, 548 F.3d 449, 458 (6th Cir. 2008) (victim's statements to family and friends regarding abuse she had received at hands of petitioner not testimonial); *United States v. Franklin*, 415 F.3d 537, 545-46 (6th Cir. 2005) (citing cases) (casual statements to family and acquaintances nontestimonial under *Crawford*). Petitioner is not entitled to relief on this claim.

Petitioner finally challenges the testimony of Jesus Ramirez, the victim's brother, who testified that "[a]ll the blood was in the bathroom where he murdered my brother. He did a vicious crime. He should have never killed my brother like that." Petitioner also claims that Ramirez's testimony that the victim "never had no problem with nobody until he met [Petitioner]" was inadmissible. As the Michigan Court of Appeals noted in

8

rejecting Petitioner's claim, *See O'Bryan,* Slip. Op. at * 3, Ramirez did not testify as to any out-of-court statements made by any persons, thus, Petitioner's right to confrontation was not violated. *See e.g. U.S. v. Stone,* 432 F.3d 651, 653-54 (6th Cir. 2005) (finding that Internal Revenue Service agent's expert testimony in income tax conspiracy and tax evasion prosecution did not rely on testimonial hearsay in violation of Confrontation Clause, where agent's opinions were supported by prior in-court witness testimony and admitted documents, rather than out-of-court interviews with witnesses who did not testify).  Moreover, in light of the fact that Petitioner admitted his involvement in the assault to the police, as well as in a letter to the victim's family, the admission of Ramirez's testimony was harmless error at best. *See Tucker v. Warden, Ohio State Penitentiary,* 64 F. App'x 467, 472 (6th Cir. 2003)*; see also Denny v. Gudmanson,* 252 F.3d 896, 904-05 (7th Cir. 2001).

Because none of the testimony violated the Confrontation Clause, counsel was not ineffective for failing to object to its admission on this basis. *See e.g. U.S. v. Johnson,* 581 F.3d 320, 328 (6th Cir. 2009).  Petititoner is not entitled to habeas relief on his first claim.

### B.  Claims # 2 and # 4   The ineffective assistance of counsel/*Walker* hearing/combined trial claims.

Petitioner next contends that he was deprived of the effective assistance of counsel.  For purposes of judicial clarity, the court will also discuss Petitioner's fourth claim because it is related to some of his ineffective assistance of counsel claims.

To show that he was denied the effective assistance of counsel under federal

9

constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S.Ct. at 792)).  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (*quoting Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of

10

the *Strickland* standard was unreasonable.  This is different from asking whether

defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*,

131 S.Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a

state court has even more latitude to reasonably determine that a defendant has not

satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541

U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial

review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means

that on habeas review of a state court conviction, "[A] state court must be granted a

deference and latitude that are not in operation when the case involves review under

the *Strickland* standard itself." *Harrington*, 131 S.Ct. at 785.

Petitioner first contends that trial counsel was ineffective for waiving the reading

of the charges against him at the arraignment on the information in the circuit court.

Petitioner does not claim that he was unaware of the charges against him nor does he

otherwise show how he was prejudiced by counsel's waiver of the reading of the

information at the arraignment.  Accordingly, Petitioner has failed to show that counsel

was ineffective for waiving the reading of the information at the arraignment. *See Smith

v. McCaughtry,* 55 F. Supp. 2d 938, 942 (E.D. Wis. 1999).

Petitioner next contends that counsel was ineffective for failing to move for a

*Walker* hearing, in order to suppress his statement.[4]  As part of his fourth claim,

Petitioner contends that the trial court erred in failing to conduct a *Walker* hearing.

Petitioner has failed to show that his statement would have been suppressed

---

[4] *People v. Walker (On Rehearing),* 132 N.W. 2d 87 (Mich. 1965).

11

had counsel requested a *Walker* hearing.  On direct appeal, the Michigan Court of

Appeals rejected Petitioner's *Walker* hearing claim on the ground that Petitioner failed

to allege that his statements were involuntary. *O'Bryan,* Slip. Op. at * 8.  Under

Michigan law, a criminal defendant is entitled to a *Walker* hearing to prevent prejudice

that may occur if a defendant has given police inculpatory statements "which are

considered legally inadmissible due to the coercive circumstances surrounding the

confession." *People v. Spivey*, 310 N.W.2d 807, 808 (Mich. Ct. App. 1981).  However,

"[O]ther factors relating to the confession, such as credibility, truthfulness and whether

the statement had been made at all, remain for the determination of the trier of fact." *Id.*

In his motion for relief from judgment and in his petition, Petitioner claims that his

statement was involuntary because the police deceived him by initially telling Petitioner

that they were merely investigating an unrelated robbery case.

Police trickery alone will not invalidate an otherwise voluntary statement. *See*

*Frazier v. Cupp*, 394 U.S. 731, 737-39 (1969) (interrogator's misrepresentation that

co-suspect had already confessed did not render suspect's confession coerced);

*Ledbetter v. Edwards*, 35 F.3d 1062, 1066-70 (6th Cir. 1994) (police officer's false

statements that police had matched defendant's fingerprints to prints in victim's van

and that two witnesses had identified defendant did not make confession involuntary);

*see also Terry v. Bock,* 208 F. Supp. 2d 780, 790 (E.D. Mich. 2002) (determination that

defendant voluntarily waived his *Miranda* rights prior to making his second statement

was not unreasonable, even if officer misrepresented to petitioner that co-defendant

had made a statement against defendant).  Petitioner does not allege that the police

failed to advise him of his *Miranda* rights, physically coerced or threatened him, or

12

withheld food, water, bathroom privileges or deprived him of sleep or medical care.
Moreover, there is nothing within Petitioner's allegations which establishes any trickery
on the part of the police.  The detectives initially questioned Petitioner about the
robbery case involving Dale DeWitt and at the conclusion of that interrogation pulled
out a photograph of the murder victim and asked Petitioner if he knew him.  The failure
of the police to inform Petitioner that he could be questioned about the Ramirez murder
when they initially questioned him about the DeWitt robbery did not render his
confession involuntary. *See Colorado v. Spring,* 479 U.S. 564, 577 (1987) ("[T]he
failure of the law enforcement officials to inform [defendant] of the subject matter of the
interrogation could not affect [defendant's] decision to waive his Fifth Amendment
privilege in a constitutionally significant manner.").

In light of the fact that there was no legal basis to exclude Petitioner's statement,
counsel was not ineffective for failing to move for a *Walker* hearing. *See e.g. Brown v.
McKee,* 231 F. App'x 469, 475 (6th Cir. 2007).  Petitioner has also failed to show that
his rights were violated by the trial court's failure to conduct a *Walker* hearing.

Petitioner next contends that his trial counsel was ineffective for failing to move
to have the robbery charges involving DeWitt combined into a single trial with the
murder charges.  As part of his fourth claim, Petitioner contends that the trial judge
erred in failing to consolidate these charges for trial.

A habeas petitioner must establish that he was prejudiced by his counsel's
failure to move to consolidate different criminal cases in order to obtain habeas relief
based on counsel's ineffectiveness. *See e.g. Rountree v. Balicki,* 640 F.3d 530, 543-44
(3rd Cir. 2011).  Petitioner failed to show that he was prejudiced by counsel's failure to

13

move for the consolidation of these unrelated charges at trial.  Petitioner is thus not entitled to relief.

Petitioner is also not entitled to relief on his fourth claim involving the trial judge's failure to consolidate the cases because he does not cite to any Supreme Court caselaw which requires, as a matter of constitutional law, that a trial court consolidate unrelated criminal cases into a single trial.  Given the lack of holdings by the Supreme Court on the issue of whether a state court violates a habeas petitioner's due process rights by failing to consolidate unrelated criminal charges into a single trial, the Michigan courts' rejection of Petitioner's claim involving the trial court's failure to combine the charges into a single trial was not an unreasonable application of clearly established federal law. *See Wright v. Van Patten,* 552 U.S. 120, 126 (2008); *Carey v. Musladin,* 549 U.S. 70, 77 ( 2006).

Petitioner next contends that trial counsel was ineffective for failing to object to the prosecutor's various remarks during *voir dire*, in which the prosecutor asked prospective jurors what amounted to hypothetical questions about the case.

The use of hypothetical questions or examples during *voir* dire is permissible and does not entitle a habeas petitioner to relief. *See Hunt v. Wolfenbarger,* No. 04-10046, 2007 WL 2421551, at *11-12 (E.D. Mich. Aug. 27, 2007).  Defense counsel's failure to object does not violate the first prong of *Strickland* because it was reasonable not to object when the prosecutor's evident purpose was to inquire into a valid area of *voir dire* examination. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).  Moreover, even assuming that counsel was deficient in failing to object, Petitioner fails to show prejudice because under the circumstances of this case, there

14

is no reasonable probability that but for the failure of Petitioner's counsel to object to the prosecutor's use of hypothetical questions, the outcome of Petitioner's trial would have been different. *Id.*

Petitioner next contends that trial counsel was ineffective for failing to challenge for cause three jurors who were either acquainted with the judge, the prosecutor, or defense counsel.

To maintain a claim that a biased juror prejudiced him, for purposes of maintaining an ineffective assistance of counsel claim, a habeas petitioner must show that the juror was actually biased against him. *See Hughes v. United States,* 258 F.3d 453, 458 (6th Cir. 2001).

In the present case, all three jurors indicated that they could be fair and impartial. (Dkt. # 9-6, Pg. ID 463, 472, 475, 477).  In light of the fact that all three jurors indicated that they could be fair and impartial, trial counsel was not ineffective in failing to challenge them for cause in spite of their being acquainted with either the judge, the prosecutor or defense counsel. *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 861 (E.D. Mich. 2009) (finding that defense counsel was not ineffective in failing to challenge for cause two jurors who either were prior victims of crimes or who had family members who were prior victims of crimes, where each juror indicated that they could serve on the jury and be impartial, and there was no apparent reason to disbelieve the jurors' affirmations).

Petitioner also appears to argue that trial counsel was ineffective for failing to peremptorily challenge several jurors because they had either served on prior juries involving homicide or assault cases or appeared in their answers during *voir dire* to be

15

confused with respect to the differences between the crime of murder and the crime of the lesser offense of voluntary manslaughter. Petitioner has failed to show that any of the jurors who sat on his case had an actual bias towards him, thus, he has failed to show that he was prejudiced by counsel's decisions regarding the exercise of peremptory challenges. *See e.g. Tinsley v. Million,* 399 F.3d 796, 805-06 (6th Cir. 2005).

Petitioner next contends that trial counsel was ineffective for failing to make an opening statement.

"The timing of an opening statement, and even the decision whether to make one at all, is ordinarily a mere matter of trial tactics and in such cases will not constitute the incompetence basis for a claim of ineffective assistance of counsel." *Millender v. Adams*, 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002) *(quoting United States v. Rodriguez-Ramirez*, 777 F.2d 454, 457 (9th Cir. 1985)). Petitioner is not entitled to relief because he has failed to show how he was prejudiced by counsel's failure to make an opening statement. *See e.g. Moss v. Hofbauer,* 286 F.3d 851, 864 (6th Cir. 2002) (finding counsel not ineffective for failing to make opening statement, where the petitioner failed to articulate how the absence of an opening statement prejudiced him).

Petitioner next contends that trial counsel was ineffective for failing to adequately cross-examine Heidi Reinero, Dr. Patrick Cho, and Valerie Bowman.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect

16

better tactics may have been available." *Id.*

Petitioner's counsel extensively cross-examined Dr. Cho, obtaining an admission from him that prompt medical attention may have saved the victim's life. Dr. Cho further acknowledged that the wounds received by the victim could have been medically treated. Dr. Cho specifically noted that the subarachnoid hemorrhage suffered by the victim could be treated with medications. Dr. Cho further admitted on re-cross examination that the victim could have been mobile for some time after the assault. (Dkt. # 9-7, Pg. ID 520-21.) Defense counsel did cross-examine Heidi Reinero about the time line concerning the events and obtained an admission from her that the victim drank alcohol every day. (Dkt. # 9-8, Pg. ID 542-46.) Defense counsel obtained admissions from Valerie Bowman that her investigation showed that the victim had been mobile for some time after the assault, even having the ability to attempt to clean up the blood from around his house after the assault. (*Id.,* at Pg. ID 562.) Petitioner mentioned the essence of Bowman's and Dr. Cho's testimony as part of an extended closing argument, in which he asked the jury to return a verdict of voluntary manslaughter. (Dkt. # 9-9, Pg. ID 597-601.)

In the present case, defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses and in his closing argument emphasized the weaknesses in the testimony of the various witnesses. *See Krist v. Foltz,* 804 F.2d 944, 948-49 (6th Cir. 1986). Defense counsel did not perform ineffectively by not more forcefully cross-examining these three witnesses, particularly when the effect of further probing is entirely speculative on Petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d

753, 764-65 (6th Cir. 2012).

As part of his claim involving counsel's failure to adequately cross-examine, Petitioner appears to argue that counsel should have raised a defense that the victim's death was caused by a pre-existing condition, in that there was evidence that the victim already had a subarachnoid hemorrhage prior to the assault.

Petitioner is not entitled to habeas relief on this claim for two reasons.  First, Petitioner has presented no evidence that the victim suffered from a pre-existing subarachnoid hemorrhage.  Although Petitioner notes that Heidi Reinero told the police in an interview that the victim took medication after receiving a head contusion during a robbery, this does not establish that the victim had a pre-existing subarachnoid hemorrhage.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  Because there is no evidence that the victim suffered from a pre-existing condition, Petitioner's claim is unsupported.

Secondly, even assuming that the victim suffered from a pre-existing subarachnoid hemorrhage, this would not absolve Petitioner of the victim's murder.  To warrant a conviction of homicide under Michigan law, death must be the natural and probable consequence of the unlawful act and not the result of an independent intervening cause in which the accused did not participate and which he could not foresee. *People v. Clark*, 431 N.W.2d 88, 89 (Mich.Ct.App. 1988).  The prosecution does not need to prove that the defendant's conduct was "the" proximate cause of death, but only "a" proximate cause of death. *People v. Tims*, 534 N.W.2d 675, 680-81 (Mich. 1995).  The prosecution can prove the element of proximate cause beyond a

18

reasonable doubt where non-fatal wounds "cause death indirectly through a chain of natural effects and causes unchanged by human action." *People v. Thomas*, 270 N.W.2d 157, 161 (Mich. Ct. App. 1978).

Even assuming that the victim already suffered from a subarachnoid hemorrhage, there was overwhelming evidence that Petitioner's actions contributed to the victim's death.  The evidence established that Petitioner hit the victim at least three times with a 4X4 post that was found at the victim's house.  The victim's head slammed into a wall at least once.  Petitioner admitted this to the police.[5]  The victim sustained numerous other injuries, including damage to the brain, fractured ribs, and a fractured vertebra.  Dr. Cho testified that it was a combination of these injuries that caused the victim's death. (Dkt. # 9-7, Pg. ID 517, 521.)  In light of the fact that Petitioner's actions, at best, exacerbated an already pre-existing condition, thus leading to the victim's death, Petitioner is unable to show that counsel was ineffective for failing to present a defense that Petitioner's actions did not cause the victim's death.

Petitioner further claims that trial counsel was ineffective for permitting Heidi Reinero to commit perjury.

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972).  There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted).  To prevail on a claim that a conviction

_____

[5]  See Petitioner's Statement, pp. 19-23, admitted as People's Exhibit 78, also attached to the Petition for Writ of Habeas Corpus.

was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than just misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343.  Additionally, the fact that a witness contradicts himself or herself or changes his or her story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).  A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

Petitioner has offered no evidence that Ms. Reneiro committed perjury. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971). More importantly, assuming that Ms. Reneiro lied about her telephone conversation with the victim, Petitioner is still not entitled to habeas relief on a perjury claim, because he has failed to show that the prosecutor knew that Ms. Reneiro had testified falsely. *See Rosencrantz v. Lafler,* 568 F.3d 577, 587 (6th Cir. 2009).  Petitioner's ineffective assistance of counsel claim fails, because he has not shown that the prosecution knowingly used perjured testimony. *Monroe,* 197 F. Supp. 2d at 760.      Although not

20

delineated in any of his headings, Petitioner further appears to argue that trial counsel was ineffective for not adequately presenting evidence in support of Petitioner's claim that he had been provoked by the victim into assaulting him, so as to mitigate the charge to voluntary manslaughter.  As mentioned above, counsel did argue to the jury that Petitioner had been provoked into assaulting the victim after the latter called Petitioner a "bitch."

Under Michigan law, to establish voluntary manslaughter, the evidence must establish (1) that the defendant killed in the heat of passion; (2) that the passion was caused by an adequate provocation; and (3) that there was not a lapse of time during which a reasonable person could control his passions. *Williams v. Withrow,* 328 F. Supp. 2d 735, 748-49 (E.D. Mich. 2004) (citing *People v. Pouncey*, 471 N.W.2d 346, 350 (Mich. 1991)).  Mere words alone generally do not provide adequate provocation to reduce a murder charge to manslaughter. *See Allen v. United States,* 164 U.S. 492 (1896); *Pouncey,* 471 N.W.2d at 350.  The only evidence of provocation was the victim calling Petitioner a "bitch."  Because this evidence would have been insufficient to reduce Petitioner's murder charge to manslaughter, Petitioner was not prejudiced by any alleged inadequacies in the presentation of a provocation defense.  Petitioner is not entitled to relief on his second claim.

**C. Claim # 3.  The substitution of counsel claim.**

Petitioner lastly claims that he was deprived of the effective assistance of counsel when the trial court denied Petitioner's request for substitute counsel at his arraignment on the information without inquiring into the reasons for Petitioner's dissatisfaction with counsel.

21

The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993) (*citing Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id. (quoting Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006) (*quoting Caplin & Drysdale,* 491 U.S. at 624-25). However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F.3d at 1348 *(citing to Wheat v. United States,* 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir. 1985).

In reviewing a motion for substitution of counsel, a reviewing court should consider "the timeliness of the motion; the adequacy of the [trial] court's inquiry into the defendant's complaint; and the asserted cause for that complaint, including the extent of the conflict or breakdown in communication between lawyer and client (and the client's own responsibility, if any, for that conflict)." *Martel v. Clair*, 132 S.Ct. 1276, 1287 (2012). "Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Id.*

22

Although all of the federal circuit courts agree that a court "cannot properly resolve substitution motions without probing why a defendant wants a new lawyer[.]", *Martel,* 132 S.Ct. at 1288, the Supreme Court in *Martel* did not require, as a matter of federal constitutional law, that a trial court must engage in an inquiry with a criminal defendant concerning the nature of his or her complaints against counsel before denying a motion for substitution.  Indeed, the Supreme Court in *Martel* held that a federal district court did not abuse its discretion in denying a habeas petitioner's motion for substitution of counsel without first conducting an inquiry into the nature of his complaints, where the motion was untimely and the court was ready to render a decision in that case. *Id.* at 1288-89.  There is no clearly established federal law from the Supreme Court requiring an inquiry into the nature of a defendant's dissatisfaction with his or her counsel prior to denying a motion for substitution of counsel. *See James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a grant of relief because the inquiry requirement was not clearly established Federal law).  Thus, in the absence of a showing that a habeas petitioner received the ineffective assistance of counsel at trial, a state trial judge's failure to inquire into a habeas petitioner's complaints against his or her counsel before denying a motion for substitution of counsel would not entitle the petitioner to habeas relief. *See Peterson v. Smith,* 510 F. App'x 356, 366-67 (6th Cir. 2013).

Petitioner has failed to show that he was denied the effective assistance of counsel at trial.  Because Petitioner received the effective assistance of trial counsel, the denial of him motion for substitute counsel did not deprive him of his Sixth Amendment rights. *See U.S. v. Vasquez*, 560 F.3d 461, 468 (6th Cir. 2009); *see also*

23

*Ray v. Curtis,* 21 F. App'x. 333, 335 (6th Cir. 2001).  Petitioner is not entitled to habeas relief on his final claim.

### D.  A certificate of appealability.

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. at 327.  In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merits of the claim. *Id.* at 336–37.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court will deny Petitioner a certificate of appealability.

The standard for granting an application for leave to proceed *in forma pauperis* is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant leave to proceed *in forma pauperis* if it

24

finds that an appeal is being taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R.App.

P. 24(a); *Foster*, 208 F. Supp. 2d at 764–65. "Good faith" requires a showing that the

issues raised are not frivolous; it does not require a showing of probable success on

the merits. *Id.* at 765. Although this is a decidedly lower standard, the court will

nonetheless deny leave to proceed *in forma pauperis* on appeal because appeal would

be frivolous for the reasons stated above.

### IV. CONCLUSION

IT IS ORDERED that Petitioner James O'Bryan's petition for writ of habeas

corpus (Dkt. # 1) is DENIED.

IT IS FURTHER ORDERED that leave to proceed in forma pauperis on appeal

is DENIED.

This court DECLINES to issue a certificate of appealability.


s/ Robert H. Cleland

ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  February 10, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, February 10, 2016, by electronic and/or ordinary mail.

S/Lisa Wagner

Case Manager and Deputy Clerk
(313) 234-5522